*Evanston Insurance*
*v.*
*G&T Fabricators, Inc.*

*Expert Report*

*provided by*

*Jim Leatzow*
*Leatzow & Associates, Inc.*

1

| | |
|---|---|
| Date: | December 30, 2009 |
| Submitted to: | Mr. Patrick Genzler, Esq.<br>Vandeventer Black LLP<br>101 W. Main Street<br>World Trade Center<br>Norfolk, VA 23510 |
| Pertaining to: | **Evanston Insurance**, Plaintiff (Evanston)<br>vs.<br>**G&T Fabricators, Inc.**, Defendant (G&T)<br><br>in the U. S. District Court Eastern District of North Carolina<br>Case No.: 7:09-CV-22-FL |
| Prepared by: | Jim Leatzow, Leatzow & Associates, Inc. |
| Purpose: | Investigation and evaluation of the application process and sale of certain insurance policies to Mr. Gary Speck, a welder by trade and owner of G&T Fabricators, Inc. (G&T) Those policies ultimately named both Gary Speck and G&T Fabricators, Inc. as named insureds.<br><br>G&T was hired to provide welding services to metal tank #201 located at Allied Terminal in Chesapeake, Virginia, the site of a liquid fertilizer spill on November 12, 2008 resulting in the denial of various insurance coverages by Evanston Insurance Company for the benefit of their policyholder. |

2

**Executive Summary**

This litigation involves the underwriting, issuance and sale of certain insurance policies to Mr. Gary Speck, a welder by trade and owner of G&T Fabricators, Inc. G&T was hired in 2006 to provide welding services to metal tank #201 located at Allied Terminal in Chesapeake, Virginia, the site of a fertilizer spill later resulting in the denial of various insurance coverages by Evanston Insurance Company that had been purchased for the benefit of their dual named policyholder, Speck/G&T.

Since very minimal discovery has been undertaken at this point, it is not yet possible to exactly reveal all of the precise actions and inactions contributing to this insurance chain-of-commerce dispute. Upon my receipt of additional information pursuant to this dispute, I reserve my right to amend my report and opinions pending additional information. Central to the issuance of the policies specifically and this litigation generally, are the roles, duties and obligations of the licensed insurance individuals and firms that participated in the application process, underwriting, policy issuance and ultimate sale of the policies now subject to this litigation. These are the same insurance policies under which coverage is now being denied by Evanston Insurance Company.

What is known is that Mr. Speck personally had 10 years of tank welding experience involving rebuilding tanks and that he previously had been insured elsewhere. G&T also had been performing such welding services at Allied Terminal in 2006, before becoming insured through a local broker, Ms. Terri Sweet employed by Southeastern Insurance. Southeastern Insurance first filled out applications for G&T as a contractor risk in September 2006. In February 2007 Southeastern resubmitted the same applications they had previously prepared with no apparent alterations other than the date of the applications.

Those applications were submitted to a General Agent (Deering/Insurance House) that apparently had underwriting authority as is custom and practice for a General Agent. Deering/Insurance House underwrote the risk described on the applications that resulted in the initial and renewal general liability policies being issued by Evanston Insurance Company. These are the same policies for which Evanston is now seeking rescission.

3

Case 7:09-cv-00022-FL   Document 44-1   Filed 06/18/10   Page 3 of 18

## Statement of Opinions to Be Expressed

1. The standard of care applicable to the services performed by licensed insurance producers is comprised of three distinct critical elements:
    I. That the licensed producer must reasonably understand their clients insurance need/risk profile, and;
    II. That the licensed producer must offer insurance products the agent personally understands to be commensurate with that need or alternatively to explain why such coverage is not available, and;
    III. The licensed producer must offer to provide an annual review at a minimum (or more often if appropriate) to determine if the client's needs or situation has changed over the course of a year.
2. Terri Sweet, broker of Southeastern Insurance filled out various applications describing the G&T risk that were submitted to Evanston Insurance via their General Agent, Deering/Insurance House.
3. Deering/Insurance House, as the General Agent with apparent underwriting authority, had an obligation to adequately review those applications and make sufficient inquiry to understand the risk they were theoretically securing coverage for. A General Agent is held to a higher duty and standard of care than an agent, because a General Agent functions as an insurance company's branch office with varying amounts of authority and obligation described contractually.
4. Whoever made the decision to choose the incorrect ISO general liability rating code reflected on the policies as issued, erred in that decision since it inaccurately portrayed the G&T risk and necessarily voided the coverage G&T was specifically seeking from Evanston Insurance Company.
5. The Complaint for Declaratory Judgment contains numerous inaccuracies portraying the application process, submissions and manner in which underwriting information was presented to Evanston by their broker and General Agent.

## Basis for the Opinions Expressed

**Standard of care as it pertains to licensed insurance producers including General Agents**

- While each state may have specific licensure and other requirements which might not be universally applicable across the nation, the producer's standard of care is a national standard applicable to licensed insurance producers in all states. The purpose of licensure for insurance producers is the same in every state: to protect the public. Insurance producers, such as Southeastern and Deering/Insurance House are not "order takers" as evidenced by the requirement

4

to pass exams in order to secure a license and then to further their knowledge through continuing education in order to maintain a license. Continuing education requirements exist in all states plus the District of Columbia.

- Understanding the applicant's insurance needs is essential in the sale of complex insurance products. It is well settled and accepted that an insurance policy will not be construed to provide NO COVERAGE.
- Understanding the insurance product by the licensed producer is essential. It is unreasonable to think a person that obtains an insurance license to sell insurance products is absolved from having responsibility for understanding the products they are licensed to sell. If a person with a license sells those products to the public and gets paid for the sale of those products, then the licensed person has a responsibility to make certain the product they chose to sell solves the very problem for which it was sought by their client and for which the insurance producer then got paid.
- If a licensed insurance producer is not able to provide coverage for a risk that is evident or requested, then it is incumbent upon that producer to inform the client that such coverage is not available either by the producer or in the marketplace, whichever applies. The client can then make an informed decision on their desired course of action, whether to be insured elsewhere, self-insured or uninsured.
- As to the application process in this case, Ms. Sweet first took applications in September 2006. Contrary to the assertions in the Evanston Complaint for Declaratory Judgment (DJ ¶ 10), the Defendants sought commercial general liability from their broker, Terri Sweet. The defendants would reasonably have no knowledge as to which insurance markets would be appropriate for commercial general liability for his welding business. Moreover, Speck/G&T was precluded from any contact with Evanston Insurance or any such insurer. That is precisely why the public relies on the services of licensed insurance agents, brokers and General Agents; to guide them through the difficult and confusing process of properly submitting an accurate description of their exposures in hopes of securing insurance coverage to meet their needs and cover their risk exposures.
- Following the submission of Speck's original September 2006 applications, re-dated by insurance producer Terri Sweet of Southeastern Insurance with no apparent changes other than re-dating the applications to February 2007, the identical information was re-submitted. It is not yet known whether Speck was consulted as to changes in his work or whether he was asked to review the information on the applications for either submission.

- Southeastern Insurance, the local broker was unable to place the subject risk on a direct basis with their direct, contracted companies because of the difficulty of the risks involved and Southeastern alone decided to submit the applications they prepared for G&T to Deering/Insurance House because of their apparent ability to handle difficult risks as a General Agent with specialized underwriting authority.
- To underscore the difficulty of G&T from an underwriting perspective, the policies were ultimately issued on a surplus lines basis as opposed to a standard lines basis. Insurance industry custom and practice recognizes that those risks not qualifying for standard companies and requiring surplus lines companies are inherently more difficult to place and typically involve substantially more risk. These realities demand different treatment, Special handling and care since the insured gives up substantial protection when one's policies are issued on a surplus lines basis; including restrictive coverages, increased premium and loss of protection by the state's Insurance Guaranty Fund or its equivalent.
- As a testimonial to the difficulty surrounding surplus lines and difficult risks, the following is a quote taken from the Deering/Insurance House website: ***"The insurance industry is like no other. Complex by nature, it is continually evolving. Insurance House responds to the complicated environment of claims, regulation, liability and risk by bringing clarity to the experience."*** It is difficult to envision what clarity was brought to Speck and his welding contracting business when he learned that the insurance he had applied for was denied for the very exposures he was seeking to cover. (emphasis added)
- In addition, Deering/Insurance House provides Speckific insight into their claimed abilities as insurance professionals by further claiming on their website: ***"Insurance House is a managing general agency and excess & surplus lines broker serving 1,850 independent insurance agencies in 12 states through four underwriting branch offices located in Marietta, GA, Silver Spring, MD, Winston-Salem, NC, and Durham, NC. Within each branch are brokerage and binding underwriting professionals placing clients' risks with high-quality property and casualty insurance carriers with a minimum rating of "A-".*** (emphasis added) It is reasonable to expect that Deering/Insurance House possesses the knowledge, experience and ability to properly insure a contracting risk such as Speck/G&T, or to pass on the risk if it was too difficult for their abilities and inform the potential policyholder of their inability to appropriately insure the risk.
- Admittedly, the General Agent relies on the applications submitted by the broker (Southeastern), but it is incumbent upon the General Agent to request sufficient information to properly and

6

adequately ascertain the risk exposure. The General Agent chose not to inspect the risk as shown on both the new and renewal applications, for had such inspection been performed either the policy would have been properly issued or issuance would have been denied, long before a claim.

- The term "building" of tanks referred to on the application is not an insurance term of art. Necessarily that term could and should include "re-building". Nowhere on any documents reviewed to date is there any reference to G&T only "building" new tanks as is being alleged.
- Since G&T had been working on Allied Terminal property performing the identical rebuilding of tanks by welding prior to being insured through Evanston, it is only reasonable that the broker and the General Agent could and should have asked sufficient questions to properly qualify their client for the insurance being sought. If the broker or the General Agent did an inadequate job at investigating the exposure for properly submitting this risk for coverage, then the broker or the General Agent breached the standard of care reasonably expected of them in properly placing insurance risks.
- Included in the documents produced by the broker, the MGA & the insurer are copies of applications both signed and unsigned by Gary Speck, owner of G&T Fabricators. In both examples of applications that had been prepared by broker Terri Sweet, the Schedule of Hazards reflects "Builds Above Ground Storage Tanks". The Products/Completed Operations exposure reflects only "Tanks" without further explanation. It is unknown how that language was chosen since it was typed on the ACORD application form by the producing broker.
- In materials provided from the files of the General Agent, and Evanston Insurance Company the general liability premium rating basis, as found on the Commercial General Liability Coverage Part Supplemental Declarations Page (Form 011-1061 (11-06)) for the original policy (#CL320100502) issued effective 02/22/2007 reflects a Description of Hazards/Insured Classification of "Tank Building or Mfg. – metal – not pressurized" with general liability code number "59660" and a Premium Basis of $70,000 in Gross Sales. Such insurance specific underwriting detail is unknown to the lay public. It is inconceivable that Gary Speck, a welder by trade and owner of G&T Fabricators would have had any involvement in the selection of the any rating code basis, especially since it had been typed on the forms prior to Speck being asked to even sign applications for insurance.
- Someone in the chain of commerce of the issuance of this policy chose the improper rating classification for G&T. It was not, nor could it have been G&T. Traditionally only the insurance company or their General Agent makes such a decision. Such a mistake especially with

7

compelling history of the contractor's prior work at Allied Terminals readily evident is a breach of the standard of care expected in the application submission process. Whether the classification was chosen by Evanston or Deering, and I have been led to believe it was by Evanston, the outcome is the same; namely coverage as applied for was denied.

**Inaccuracies found in the Complaint for Declaratory Judgment**

- The Complaint for Declaratory Judgment paragraph 17 asserts that the Defendant contractor "did not inform Evanston that their business and operations also included repair, refabrication and modification of previously built storage tanks". As a clear obligation of custom and practice, the broker via the agent are the expected source of any such information, since the insured does not and did not have direct contact with the insurer.
- The Complaint for Declaratory Judgment paragraph 18 asserts that Speck/G&T "represented that their business and operations involved building of tanks used *only for dry storage*." (emphasis added) This simply is untrue. In a fax dated September 9, 2006 between the broker, Terri Sweet and Evanston's General Agent, Gaye VonCannon, Deering/Insurance House, the question was asked "What will the storage tanks be used for?" Sweet replied "Fertilizer storage; Dry storage." The fertilizer was not described as wet or dry and the words "only used" appear nowhere. Moreover, it is well settled that notice to the agent constitutes notice to the insurer and this is certainly true in a General Agent/Agency relationship. Therefore, Evanston knew or should have known that the tanks Speck/G&T worked on did involve both fertilizer in an unspoken form and dry storage as well.
- The Complaint for Declaratory Judgment paragraph 19 asserts that the Defendant did not inform Evanston of work done on tanks involving liquid storage. Like the response above pertaining to paragraph 18, no application provided thus far has indicated that Speck/G&T were attempting to mislead anyone. If the question regarding liquid storage tanks was central to denying coverage, then the broker and General Agent did an insufficient job at understanding the work of their client and properly underwriting the specific risks involved.
- Complaint for Declaratory Judgment paragraph 21 asserts that the Defendant did not inform Evanston of "any exposure to..... chemicals". As stated above, the Defendant readily admitted his work involved "fertilizer" in the applications used over two years of insurance. If the insurance professionals do not understand the concept of fertilizers including "chemicals" as part of the submission and underwriting process, it certainly is unreasonable to expect the lay policyholder to

8

have a higher level of insurance risk exposure experience and understanding than those retained and compensated to cover his known work.

**In Conclusion:**

This dispute is an example of a contractor attempting to secure insurance protection for his business which he has been engaged in for over 10 years and previously insured for as well. As part of that process, the broker representing that potential policyholder filled out applications for their client describing the nature of the business their client undertakes and has undertaken in the past. As part of the application process, the insurance company or their General Agent assigned certain liability rating codes that not only did not reflect the actual operations of their potential client; the choice of those codes guaranteed NO COVERAGE to this insured.

With the information presented to the underwriter on the applications, the very policy the contractor was attempting to secure was issued and renewed by the insurer, presumably lacking any coverage whatsoever, a fact not learned by the policyholder until after a catastrophic claim occurred. The purpose of having licensed insurance professionals in the submission, sale, issuance and delivery of insurance policies is to protect the public and to reasonably attempt to fulfill the insurance needs of their client. If those needs cannot be met, then it is incumbent upon the all insurance personnel in the chain of commerce to so inform their client, reasonably and hopefully before the claim occurs. To issue a policy as Evanston Insurance Company did that denies the coverage being sought is improper, inappropriate and a clear breach of the expected duty and standard of care.

**Role of Jim Leatzow as an expert**

I have been retained as an expert in this case. I have reviewed various correspondence, documents, exhibits and very limited discovery items presented and referred to in this report in forming my opinions in this case. A list of the documents I have reviewed is shown below.

The opinions expressed in this report are based upon:
- A reasonable degree of professional certainty and;
- My review of certain case materials is listed below and;
- My 37 years in the property/casualty insurance business which includes:

9

- Having performed duties as an underwriter on a national basis for 27 years;
- Having been previously and properly licensed in all 50 states and the District of Columbia as a property/casualty producer;
- Having been licensed to sell property/casualty in North Carolina for 23 years from 1983 to 2005
- Having performed duties as a Third Party Administrator property/casualty claims handler for 21 years on a national basis.

**Qualifications of Jim Leatzow**

See my CV which is attached to this report.

**Publications Authored by the Undersigned in the Last 10 Years**

I have authored no publications in the last 10 years.

**Compensation:**

I am being compensated at the rate of $285 per hour. Based on my knowledge, skill, experience, training and education, my opinions are shown above.

I am aware that discovery in this case maybe ongoing, has not been concluded as of this date and that additional discovery including deposition testimony may be expected. On the basis of expected additional discovery, I reserve the right to amend my report and any other testimony should additional information or case materials become available relative to this case.

Respectfully submitted December 30, 2009

Jim Leatzow, President
Leatzow & Associates, Inc.
1265 Pine Isle Road
Three Lakes, WI 54562
715-546-3300

## Documents reviewed by Jim Leatzow

816 pages of subpoenaed documents from Evanston Insurance Company, the insurer; Deering/Insurance House, the General Agent; and Southeastern Insurance, the broker.

Those documents include but are not limited to:
- Various insurance applications, both signed and unsigned over the course of two years
- Evanston Insurance Company Commercial General Liability policy #CL320100502
- Various email threads between the broker, Southeastern and the General Agent, Deering
- Evanston Insurance Company Commercial General Liability policy #CL320100564
- Evanston Insurance Company's claim denial letter
- Evanston Insurance Company's Complaint for Declaratory Judgment

## Leatzow's Deposition Testimony

The undersigned has testified in twelve depositions while retained to provide expert testimony:

1. **Martinez vs. Golden Eagle Insurance Company**
   Sacramento Superior Court, Sacramento, [CA – 02-AS-05900]
   **Deposition:** May 24, 2004
   **Amount in Dispute:** $900,000
   **Issue:** Property/Arson claim issues. Insured not involved and cleared of involvement with arson allegations. Damaged real property owned by Martinez. His insurance agent & his tenant did name him as an additional insured on liability portion only, but neglected to name him as a loss payee which resulted in fire claim proceeds not getting paid to Martinez. Settlement not properly valued and significantly delayed because of improper handling by local agent.
   **Dispute Disposition:** Litigation settled pre-trial.

2. **Frank J. Casserino, Inc. vs. Seibels Bruce Group, Inc. etal**
   Florida Fourth Circuit Court, Duval County, FL – [99-3930]
   **Deposition:** December 12, 2005
   **Amount in Dispute:** $1.8 million
   **Issue:** Contractor coverage denial. Contractor had multiple offices in-state and out-state. Insurance agency insured contractor Casserino while being acquired by another agency. Premium/cash paid by Casserino was stolen by acquiring agency and not reported to premium finance company as "paid". This resulted in cancellation action by premium finance company, but not properly executed to Casserino. Agent provided Certificate of Insurance to insured. In the middle of the claim, at the same approximate time that contractor Casserino died.
   **Dispute Disposition:** Litigation settled pre-trial.

8. **Rothschild Management Group, LLC vs. Affiliated Insurance Agencies, Inc.**
   Missouri District Court, Circuit Court of the City of St. Louis, MO [Cause No. 052-10425]
   **Deposition:** August 30, 2007
   **Amount in Dispute:** $3 million plus expenses
   **Issue:** Failure of insurance agent to put insurance company on notice after a serious injury occurred on property insured by the agent, resulting in a default judgment of $3 million. Agent's records did not properly identify the insured location which caused the agent to not put the GL carrier on notice of a potential claim.
   **Dispute Disposition:** Litigation settled during trial

9. **Equity Residential vs. CT Specialty Insurance Company, etal.**
   United States Northern District Court (Illinois), Eastern Division [04 C 3812]
   **Deposition:** September 28, 2007 & October 16, 2007
   **Issue:** MGA "with the pen" offered 3 year's coverage for 3 year's prepaid premium. MGA then issued three separate binders reflecting 3 year's coverage, but finally issued the actual policy reflecting only one year of coverage. MGA had intent of holding the cash for interest income, contrary to the MGA's authority. MGA only reported one year's premium to CT Specialty & did not report the additional two years of premium collected contrary to his MGA agreement. MGA terminated for this & similar contract breaches and prosecuted criminally.
   **Dispute Disposition:** Litigation settled pre-trial.

10. **Guam Power Authority (Petitioner) vs. National Union Fire Ins. Co. (Respondent)**
    American Arbitration Association (New York), demand for arbitration by Guam Power (Government Utility on Island of Guam)
    **Deposition:** November 8, 2007
    **Amount in Dispute:** $3.5 million plus expenses
    **Issue:** Guam Power Authority, Island of Guam owned a fuel oil pipeline that ruptured resulting in third party damage from a fuel spill on private properties in a wetland. The general liability policy purchased by Guam Power contained certain language and exclusions demanded by the insured entity, Guam Power during the bidding for their insurance renewal. The very language Guam Power bargained for & demanded later limited their recovery for the spill in question. In addition Guam law capped maximum recovery to a maximum of $300,000 with any payment in excess of that amount presenting itself as a voluntary payment.
    **Dispute Disposition:** Arbitration panel decided in favor of National Union Fire.

11. **Aspen Specialty Ins. Co. (Petitioner) vs. National Program Management, Inc. (Respondent)**
    Arbitration demand by Aspen Specialty Insurance Company
    **Deposition:** January 22, 2008
    **Amount in Dispute:** $1.2 million
    **Issue:** NPM is an MGA insurance agency given the pen by Aspen. NPM marketed, underwrote and issued (had the pen) certain environmental contractors general liability policies as a specialty. One policy issued to an underground tank repair contractor became the object of the arbitration when an independent contractor hired for the day made a mistake, caused an explosion in an underground tank and killed himself. Issues surrounding the matter involved the duties and standard of care for an MGA providing specialty insurance services and issuing specialty insurance policies. Aspen settled the claims then claimed NPM did not perform per the standard of care typical for MGA's.
    **Dispute Disposition:** Arbitration panel decided in favor of National Program Management

13

12. **Nadeige Mars-Francois vs. Robert Chepurna**
    Superior Court, District of Waterbury, at Waterbury, UWY CV 07 5003844 S
    **Deposition:** October 23, 2008
    **Amount in Dispute:** $350,000
    **Issue:** Mars-Francois purchased a 3-flat building being insured by the Defendant. That building had three apartments with three tenants. The Defendant issued an excess/surplus "homeowners" policy but did not confirm the Plaintiff's intention to move into one of the occupied apartments. The mortgage required owner occupancy within 60 days of closing. A fire destroyed much of the property 38 days after closing and the insurance company denied coverage.
    **Dispute Disposition:** Litigation settled pre-trial

13. **Howell & Bros. Construction, Inc. vs. McFadden Insurance Agency, Inc.**
    Clark County District Court, Las Vegas, NV [Case No. A541187 / Dept. XXIII]
    **Deposition:** June 16, 2009
    **Amount in Dispute:** $1.2 million plus expenses
    **Issue:** Failure of insurance agent to procure proper coverage for his client; to properly review the account regularly which resulted in a denied claim
    **Dispute Disposition:** Litigation pending

14. **Salvador & Angelina Bonilla v. Valley Insurance Services**
    Peach County Superior Court, Atlanta, GA [Case No. 09-V-158]
    **Deposition:** October 16, 2009
    **Amount in Dispute:** $350,000
    **Issue:** Failure of insurance agent to offer proper coverage or explanation to non-English speaking customer, then continue insuring their residence for ten years without any review, counsel, offer any increase in coverage which resulted in an underinsured claim
    **Dispute Disposition:** Litigation pending

## Leatzow's Court-Trial / Arbitration Testimony

The undersigned has testified in three court proceedings and one arbitration while retained to provide expert testimony:

1. **Rothschild Management Group, LLC vs. Affiliated Insurance Agencies, Inc.**
   Missouri District Court, Circuit Court of the City of St. Louis, MO [Cause No. 052-10425]
   **Trial Testimony:** December 11, 2007
   **Issue:** Failure of insurance agent to put insurance company on notice after a serious injury occurred on property insured by the agent, resulting in a default judgment of $3 million. Agent's records did not properly identify the insured location which caused the agent to not put the GL carrier on notice of a potential claim.
   **Dispute Disposition:** Litigation settled during trial

14

3. **Bunger Auto Electric vs. John Decker & Federated Life Insurance Co.**
   Missouri Western District Court, Kansas City, MO [4:06-CV-335]
   **Deposition:** November 9, 2006
   **Amount in Dispute:** $1.4 million
   **Issue:** Claim denial for non-payment of premium. Premium given to company representative was applied to prior policy period balances. Insured not informed of the application of the premium to a prior policy term and relied on a renewal insurance policy issued by the insurance company for coverage. At time of later fire (arson by others) loss, coverage denied.
   **Dispute Disposition:** Trial concluded

4. **United National Insurance Co. vs. Int'l Petroleum, et al.**
   United States District Court of Utah, Central Division [2:04CV00631BSJ]
   **Deposition:** January 31, 2007
   **Amount in Dispute:** $3.5 million
   **Issue:** Claim denial because insurance broker, intermediary and MGA failed to warn insured that replacement insurance policy as issued excluded the very coverages for exposures Int'l Petroleum had specifically applied for, even though such coverage had been included on prior policy from the same broker, but not on the replacement policy when/as issued.
   **Dispute Disposition:** Litigation settled pre-trial.

5. **Baranowski vs. Sundel & Milford**
   Connecticut Superior Court, Waterbury, CT [CV-03-0176458-S]
   **Deposition:** February 5, 2007
   **Issue:** Failure of local insurance agent to offer "CT conversion (UIM) coverage" to client during a 5 year insurance agency, personal lines relationship with the insured, resulting in his reduced recovery after a claim involving UIM.
   **Dispute Disposition:** Litigation settled pre-trial.

6. **St. Germaine vs. DiFrancesco Insurance Agency, Inc.**
   Connecticut Superior Court, Waterbury, CT [CV-04-01893599-S]
   **Deposition:** February 27, 2007
   **Issue:** Failure of local insurance agent to provide any client review of automobile insurance policies handled by their insurance agency for over a decade resulting in insured not being properly informed as to uninsured/underinsured (conversion) coverage as offered in CT.
   **Dispute Disposition:** Litigation settled pre-trial.

7. **Dr. Joel Schroeder vs. Marsh USA, Inc.**
   Kansas District Court, Johnson County, KS [05-CV-9411 Court 2]
   **Deposition:** May 4, 2007
   **Amount in Dispute:** $1.5 million
   **Issue:** Failure of insurance agent to make Doctor aware of available options upon changing employers and moving to a new, existing practice. Doctor could have retained former coverage, but was not informed of that option which resulted in his reduced coverage with gaps followed by a significant uncovered/denied claim that would have been covered if insured had been properly counseled by agent.
   **Dispute Disposition:** Litigation settled pre-trial.

12

2. **Aspen Specialty Ins. Co. (Petitioner) vs. National Program Management, Inc. (Respondent)**
   **Arbitration Testimony:** January 29, 2008
   **Amount in Dispute:** $1.2 million
   **Issue:** NPM is an MGA insurance agency given the pen by Aspen. NPM marketed, underwrote and issued (had the pen) certain environmental contractors general liability policies as a specialty. One policy issued to an underground tank repair contractor became the object of the arbitration when an independent contractor hired for the day made a mistake, caused an explosion in an underground tank and killed himself. Issues surrounding the matter involved the duties and standard of care for an MGA providing specialty insurance services and issuing specialty insurance policies. Aspen settled the claims then claimed NPM did not perform per the standard of care typical for MGA's.
   **Dispute Disposition:** Arbitration panel decided in favor of National Program Management

3. **Bunger Auto Electric vs. John Decker & Federated Life Insurance Co.**
   Missouri Western (8th) District Court, Kansas City, MO [4:06-CV-335]
   **Trial Testimony:** December 15, 2008
   **Amount in Dispute:** $1.4 million
   **Issue:** Claim denial for non-payment of premium. Premium given to company representative was applied to prior policy period balances. Insured not informed of the application of the premium to a prior policy term and relied on a renewal insurance policy issued by the insurance company for coverage. At time of later fire (arson by others) loss, coverage denied.
   **Dispute Disposition:** Trial concluded

4. **Pelican Tug Company, LLC vs. American Home Assurance Company**
   Texas Southern (5th) District Court, Galveston Division, City of Galveston, TX
   [Civil Action No. 3:07-CV-00434]
   **Trial Testimony:** August 26, 2009
   **Issue:** Bad Faith / Failure of claims adjuster to investigate a claim involving a sunken tug boat, thereby denying the policyholder coverage. Adjuster declared the tug boat to have been "unseaworthy" back to inception of coverage even though the craft had been used for the purpose for which it was intended over the course of five months.
   **Dispute Disposition:** Trial concluded, then settled post trial, but pre-appeal process

15

Case 7:09-cv-00022-FL   Document 44-1   Filed 06/18/10   Page 15 of 18

Cline, Julie
───────────────────────────────────────────────

**From:** Loomis, Kenan
**Sent:** Thursday, February 25, 2010 12:48 PM
**To:** 'Pat Genzler'
**Subject:** RE: Evanston v. G&T Fabricators

Pat, we have gone through your proposed 30(b)(6) issues, and don't believe issue 14 is appropriate. We will certainly put someone up to speak about the refund of premium, but its "legal effect" is outside the scope of permissible discovery and for the court to decide if need be. Please let me know if you will revise this. Also, in going through your discovery responses, we note you did not designate any experts. I know at one point you asked for and we consented to an extension of time for you to designate experts, however we never received anything from you in this regard. Thus, this is to confirm you do not intend to offer any expert testimony.

Finally, I checked with my client concerning logistics. We may be able to start on Thursday morning. Will that give you enough time for me to catch a 4:30 p.m. flight on Friday?


**Kenan G. Loomis Cozen O'Connor**
SunTrust Plaza, Suite 2200, 303 Peachtree St., N.E.
Atlanta, Georgia 30308 | P: 404.572.2028 | F: 866.591.9127
kloomis@cozen.com | www.cozen.com

 *Please consider the environment before printing this email.*

───────────────────────────────────────────────

**From:** Pat Genzler [mailto:PGenzler@vanblk.com]
**Sent:** Wednesday, February 24, 2010 9:56 PM
**To:** Kennedy-Coggins, Jennifer A.; andrewh@cmclawfirm.com
**Cc:** Loomis, Kenan
**Subject:** RE: Evanston v. G&T Fabricators

Jennifer

I'll file a formal deposition notice tomorrow but here are Allied's 30(b)(6) topics for Evanston. Please advise who will be the Evanston 30(b)(6) witnesses on these issues. Will Frank Case and Kate Schefsky cover all these topics ?

I have some concern that we will be pressed to do both depositions in one day, particularly on a Friday. What is the plan if we go over ? Please make arrangements with Frank Case and Kate Schefsky to start at 9 am and work a little late if necessary. Will Evanston insist that we segregate the 30(b)(6) depositions from the individual depositions of Case and Schefsky ? That may exacerbate the time issue.


Pat

Patrick A. Genzler      757-446-8631 (Direct)
Vandeventer Black LLP   757-446-8670 (Fax)
101 West Main St.       pgenzler@vanblk.com
500 World Trade Center
Norfolk, VA 23510
www.vanblk.com

**From:** Kennedy-Coggins, Jennifer A. [JKennedy@cozen.com]
**Sent:** Wednesday, February 24, 2010 12:57 PM
**To:** Pat Genzler; andrewh@cmclawfirm.com
**Cc:** Loomis, Kenan
**Subject:** RE: Evanston v. G&T Fabricators

Pat and Andrew,
Attached please find the proposed Consent Motion to Modify the Amended Case Management Order and a Proposed Order. Please let me know at your earliest convenience if I you have any changes or if I may have your express permission to sign and file this Motion with the Court.
Regards,
Jennifer

**Jennifer A. Kennedy-Coggins | Cozen O'Connor**
SunTrust Plaza, Suite 2200, 303 Peachtree Street NE | Atlanta GA 30308
P: 404.572.2000 | F: 404.572.2199
jkennedy-coggins@cozen.com | www.cozen.com
*Please consider the environment before printing this email.*

---

**From:** Pat Genzler [mailto:PGenzler@vanblk.com]
**Sent:** Tuesday, February 23, 2010 4:40 PM
**To:** Kennedy-Coggins, Jennifer A.; andrewh@cmclawfirm.com
**Cc:** Loomis, Kenan
**Subject:** RE: Evanston v. G&T Fabricators

No objection to the extension.

| **Patrick A. Genzler** | Email: | pgenzler@vanblk.com |
| Vandeventer Black LLP | Direct: | 757-446-8631 |

---

**From:** Kennedy-Coggins, Jennifer A. [mailto:JKennedy@cozen.com]
**Sent:** Tuesday, February 23, 2010 3:54 PM
**To:** Pat Genzler; andrewh@cmclawfirm.com
**Cc:** Loomis, Kenan
**Subject:** Evanston v. G&T Fabricators

Andrew, for your convenience, I have attached a copy of our proposed deposition topics for G&T Fabricators.

Pat and Andrew, in talking about our tight schedule with Kenan for depositions, mediation, and summary judgment in this case and the concern for getting final copies of depositions in time for the summary judgment deadline, it seems like it might be a good idea to seek a 30 day extension of the summary judgment deadline. The deadline is currently April 2. A 30 day extension would move it to May 3, 2010. Would you all be agreeable to this extension? If so, I will take care of drafting a proposed amended scheduling order.

Regards,
Jennifer

**Jennifer A. Kennedy-Coggins | Cozen O'Connor**
SunTrust Plaza, Suite 2200, 303 Peachtree Street NE | Atlanta GA 30308
P: 404.572.2000 | F: 404.572.2199

jkennedy-coggins@cozen.com | www.cozen.com

*Please consider the environment before printing this email.*

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.